Littler

**Littler Mendelson, P.C.**
900 Third Avenue
New York, New York 10022.3298

William J. Anthony
Shareholder
212.471.4404 direct
212.583.9600 main
wanthony@littler.com

September 24, 2026

**VIA ECF**

Hon. P. Kevin Castel, U.S.D.J.
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007-1312

**Re:** ***James Maxwell and Joseph Patito v. Prime Data Centers, LLC, Data Realty Holdings Corp., Nicholas Laag and Ulrich Pelz***
**Case No. 1:26-cv-04493-PKC**

Dear Judge Castel:

This office represents Defendants Prime Data Centers, LLC ("Prime"), Nicholas Laag, and Ulrich Pelz in this matter. This office represents Data Realty Holdings Corp. ("DRH") for the limited purpose of contesting personal jurisdiction. On behalf of Prime, Laag, Pelz, and, solely for purposes of contesting personal jurisdiction, DRH, we write under § 3 of Your Honor's Individual Rules of Practice to set forth the basis for the anticipated motion to dismiss Plaintiffs' Amended Complaint and to propose a schedule for that motion. At present, there are no conferences scheduled.

## I. The Anticipated Motion

Plaintiffs' Amended Complaint remains deficient as a matter of law. Defendants therefore seek dismissal of the Amended Complaint under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) as set forth below.

1. ***Plaintiffs' Second, Fifth, and Sixth Causes of Action are Duplicative of Their First Cause of Action for Breach of Contract***

In the First Cause of Action, Plaintiffs set forth a claim for breach of contract against Prime. In their Amended Complaint, Plaintiffs allege there was an offer and acceptance, and the contracts are valid and enforceable and supported by consideration. (Am. Compl. ¶¶ 15, 90, 140).

In addition to alleging enforceable contracts which they claim were breached, Plaintiffs seek relief outside of their contract based solely on the language in their contracts. Plaintiffs plead

promissory estoppel against Prime (Second Cause of Action), and unjust enrichment and quantum meruit against Prime and DRH (Fifth and Sixth Causes of Action) by incorporating the same allegations into those claims as the allegations used to support their contract claim. (Am. Compl. ¶¶ 95, 126, 134). Those claims also seek the same compensation allegedly due under Exhibit C and concern the same subject matter as the express employment agreements that Plaintiffs allege are valid and enforceable. (Am. Compl. ¶¶ 15, 90, 140). Where an enforceable agreement governs the disputed subject matter, New York law precludes recovery in promissory estoppel, unjust enrichment, or quantum meruit. *Spherenomics Glob. Contact Ctrs. v. Customer Corp.*, 427 F. Supp. 2d 236, 253 (E.D.N.Y. 2006); *Sols. Express Ltd. v. Ashley Furniture Indus., Inc.*, No. 20-cv-07843 (CS), 2023 WL 2393861, at *5 (S.D.N.Y. Mar. 7, 2023). Defendants acknowledge as they must for purposes of the anticipated motion that the employment agreements are valid and enforceable and govern the compensation Plaintiffs seek.

The quasi-contract claims against DRH also fail because Plaintiffs seek from a nonparty to the employment agreements the same compensation governed by those agreements. Plaintiffs allege no separate promise by DRH and no benefit conferred outside the contractual subject matter. *See Randall's Island Aquatic Leisure, LLC v. City of N.Y.*, 92 A.D.3d 463, 464 (1st Dep't 2012) (rejecting a quasi-contract claim against a third party nonsignatory where an agreement covered the subject matter).

As Plaintiffs allege the existence of a valid and enforceable contract, seek the same damages as in the contracts, and rely on the same facts to establish each claim, the Second, Fifth, and Sixth Causes of Action are duplicative and should be dismissed.

2. ***The Seventh Cause of Action (Breach of Implied Covenant of Good Faith and Fair Dealing) Is Also Duplicative of Plaintiffs' First Cause of Action***

The implied covenant claim duplicates the contract claim because both arise from the alleged denial of compensation under Exhibit C and seek the same resulting damages. (Am. Compl. ¶ 138). An implied covenant claim survives only when it rests on allegations different from the accompanying contract claim and seeks relief not intrinsically tied to the alleged breach. *EFG Bank AG, Cayman Branch v. AXA Equitable Life Ins. Co.*, 309 F. Supp. 3d 89, 93 (S.D.N.Y. 2018). The Seventh Cause of Action identifies no independent duty, conduct, or injury. It therefore should be dismissed. *See Schiff v. ZM Equity Partners, LLC*, No. 19-cv-4735, 2020 WL 5077712, at *8 (S.D.N.Y. Aug. 27, 2020).

3. ***The Third and Fourth Causes of Action for Violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") Are Improper***

Plaintiffs attempt to recast an intra-company compensation dispute between an employer and former employees as a civil RICO action. The substantive and conspiracy RICO claims fail as a matter of law. The Amended Complaint does not plausibly allege a distinct enterprise, predicate acts of mail or wire fraud, any injury proximately caused by racketeering activity, or a pattern of racketeering activity.

First, Plaintiffs fail to satisfy RICO's distinctness requirement. Section 1962(c) requires a RICO person to be distinct from the enterprise whose affairs that person allegedly conducts. The Amended Complaint alleges that Laag and Pelz acted through Prime and affiliated entities in making compensation, valuation, investor relations, and financial reporting decisions. Those allegations describe the entities' ordinary business affairs, not a separate enterprise with a purpose, structure, or decision-making apparatus distinct from Defendants themselves. *See Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994). Plaintiffs cannot satisfy distinctness merely by grouping a corporation, its affiliates, and the officers through whom they act and relabeling that ordinary corporate structure an association in fact.

Second, Plaintiffs fail to plead wire fraud with the particularity required by Rule 9(b). The Amended Complaint claims that the predicate acts of wire fraud include conduct toward various employees. (Am. Compl. ¶¶ 110, 112). But the allegations do not identify for each alleged predicate act the speaker, recipient, date, specific fraudulent statement or omission, why it was false when made, and how it furthered the alleged scheme. Nor do the pleaded facts support a strong inference that any Defendant acted with fraudulent intent with respect to any of these named employees, as opposed to taking a disputed position concerning valuation or contractual compensation. General references to communications and alleged misrepresentations do not plead qualifying RICO predicates.

Third, Plaintiffs lack both constitutional and statutory RICO standing. Plaintiffs do not allege an injury in fact caused by any fraudulent statement because, by their own allegations, Defendants attempted to induce them to sign an amended plan, Plaintiffs refused to sign it, questioned the validity of the revised plan, and "consistently made clear they did not agree to any modifications of their EAs." (Am. Compl. ¶¶ 42-58). Thus, the Amended Complaint does not plead a concrete injury fairly traceable to the alleged scheme. Plaintiffs also fail to plead statutory RICO standing because they do not allege that a qualifying predicate act proximately caused a clear and definite injury to their business or property. Their alleged harm arises, if at all, from a contract dispute over compensation, not from any distinct racketeering injury caused by mail or wire fraud. *See Aliev v. Borukhov*, No. 15-CV-6113 (ERK)(JO), 2016 WL 3746562, at *7 (E.D.N.Y. July 8, 2016); *Stanley v. OptumInsight, Inc.*, No. 1:13-CV-00944, 2014 WL 906145, at *5 (N.D.N.Y. Mar. 7, 2014).

Fourth, Plaintiffs fail to allege continuity sufficient to establish a pattern of racketeering activity. The alleged conduct had one narrow purpose that concerned compensation based on a limited set of employment agreements and was limited to a closed set of employees. The Amended Complaint does not plausibly allege a variety of criminal purposes, independent injuries, or a threat that the alleged conduct would continue after the compensation objective was accomplished. Nor does the Amended Complaint allege that Defendants' business was primarily unlawful, or that the predicate acts were the regular way of conducting the business. The alleged scheme was therefore inherently terminable and does not satisfy either closed-ended or open-ended continuity. *See GICC Cap. Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 466 (2d Cir. 1995); *Cosmos Forms Ltd. v. Guardian Life Ins. Co. of Am.*, 113 F.3d 308, 310 (2d Cir. 1997); *Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 412 (S.D.N.Y. 2013); *Rajaratnam v. Motley Rice, LLC*, 449 F.

Supp. 3d 45, 70 (E.D.N.Y. 2020); *Bayside Wellness Physical Therapy P.C. v. Double Why Design, Inc.*, No. 23-cv-03842 (JMA)(ST), 2025 WL 458224, at *6 (E.D.N.Y. Feb. 11, 2025).

The Section 1962(d) claim also fails. Because Plaintiffs do not plead a substantive RICO violation, the derivative conspiracy claim cannot proceed. The Amended Complaint also does not plausibly allege that Defendants knowingly agreed to commit predicate acts constituting a RICO violation, rather than participated in the challenged corporate and compensation decisions.

Accordingly, the Third and Fourth Causes of Action should be dismissed. Without a viable RICO claim, Plaintiffs also cannot invoke RICO's nationwide service provisions as a basis for personal jurisdiction over DRH.

4. ***The Eighth Cause of Action for Retaliation in Violation of Labor Law § 740 Fails for Multiple Reasons***

Plaintiffs' Labor Law § 740 claims suffer from the same deficiencies that existed in the original complaint. Plaintiffs fail to plead that they engaged in protected activity as defined by the statute. The alleged predicate acts involve only communications concerning accuracy, implementation, and reporting. (*See* Am. Compl. ¶ 150). None of the acts in which Plaintiffs participated involved a disclosure or threatened disclosure of a violation of law or danger to public health or safety, providing information to a public body, or an objection or refusal to participate in an activity, policy, or practice. *See* Labor Law § 740(a)-(c). Additionally, beyond conclusory references to a self-styled "whistleblower letter," the Amended Complaint lacks allegations regarding what the letter actually said.

The alleged retaliatory actions Plaintiffs cite in support of their Labor Law § 740 claim fall short of the retaliatory action required to state a claim. Plaintiffs allege that they were issued disciplinary notices and written warnings. (Am. Compl. ¶ 152). These are not retaliatory actions under the statute. *See Landell v. Life Bridge Dental PLLC*, 236 A.D.3d 520, 521 (1st Dep't 2025) (dismissing Labor Law claim where "Plaintiff does not allege that she suffered a reduction in pay, a change in the terms of her employment, or any other material harm or injury sufficient to plead that defendants retaliated against her because of her prior complaints"). Nor have Plaintiffs plausibly pled that they were constructively discharged. *Id.* at 521-22 (dismissing constructive discharge claim as complaint failed to allege "hostile working conditions so intolerable and pervasive that a reasonable person would have felt compelled to resign").

Finally, Plaintiffs fail to plausibly allege a causal connection between their alleged protected activity in January 2024 and July 2025 and their alleged constructive discharge in February 2026, as the length of time between them is too removed to be causally connected as a matter of law. *See, e.g.*, *Caputo v. IESI NY Corp.*, 228 A.D.3d 480, 481 (1st Dep't 2024) ("proximity of five months, without more, is not enough to create an issue of fact as to causation").

5. ***Plaintiffs Do Not State a Claim in Their Ninth Cause of Action***

Plaintiffs assert claims under N.Y. Debt. & Cred. Law § 273(a)(1) and 276, which provide that a transfer made or obligation incurred by a debtor is voidable as to a creditor if the debtor made the transfer or incurred the obligation with actual intent to hinder, delay, or defraud any creditor of the debtor.

Plaintiffs' claims under this statute as to the June 2024 Macquarie unit buyback and post-employment Grain transaction fail, as DRH is not alleged to owe Plaintiffs a debt. Rather, the obligations Plaintiffs seek to enforce emanate from their employment agreements with Prime. Moreover, the Grain transaction is alleged to be an inflow of $500 million into DRH, not an outflow of Prime's assets to evade Prime's creditors. Plaintiffs fail to plead fraudulent intent with particularity as required. *See Ma v. Maxim Int'l Grp. Inc.*, No. 24-CV-7457 (OEM)(VMS), 2026 WL 2149744, at *16 (E.D.N.Y. July 27, 2026). Plaintiffs accordingly have not stated a claim under N.Y. Debt. & Cred. Law § 273(a)(1) and 276.

6. ***The Tenth Cause of Action for a Declaratory Judgment of Alter-Ego Status or Joint and Several Liability Is Improper***

In the Tenth Cause of Action, Plaintiffs seek a declaratory judgment that DRH is the alter ego of Prime. In materially similar circumstances, the court concluded that an alter ego judgment entered before the plaintiff established the primary obligor's liability "would not usefully clarify the legal issues involved" and "would not finalize the controversy or provide the parties with relief from legal uncertainty of any consequence." *Daebo Int'l Shipping Co. v. Ams. Bulk Transp. Ltd.*, No. 12 Civ. 7960 (PAE), 2013 WL 2149595, at *3 (S.D.N.Y. May 17, 2013), *abrogated on other grounds by Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 96–101 (2d Cir. 2023) (declining an alter ego declaration before primary liability was established because it would not usefully clarify the issues, finalize the controversy, or relieve consequential uncertainty).

Indeed, a declaratory judgment is not appropriate here, as this is not a case in which a plaintiff is threatened with legal liability and seeks clarification of the legality of its conduct lest it be forced to "bet the farm, so to speak, by taking the violative action." *See Daebo Int'l Shipping Co.*, 2013 WL 2149595, at *3 (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007)).

Quite the contrary, Plaintiffs are the parties seeking to assert liability here. Until Plaintiffs establish the threshold question of Prime's liability, "a judgment on the ancillary question of alter ego liability will not finalize the controversy." *See Daebo Int'l Shipping Co.*, 2013 WL 2149595, at *3.

7. ***The Court Lacks Personal Jurisdiction Over DRH***

Apart from the deficiencies in the claims set forth above, dismissal of DRH is warranted because the Court does not have personal jurisdiction over it. Since Plaintiffs' RICO claims fail as a matter of law, Plaintiffs cannot rely on RICO's jurisdictional provision, 18 U.S.C. § 1965. *See*

*Broidy v. Glob. Risk Advisors LLC*, No. 1:19-CV-11861 (MKV), 2023 WL 6258135, at *5 (S.D.N.Y. Sep. 26, 2023). And even if Plaintiffs' RICO claims were somehow deemed sufficient, nationwide personal jurisdiction under § 1965(b) is not automatic, as it requires a showing that the 'ends of justice' require that other parties residing in any other district be brought before the court. *See City of N.Y. v. Singh*, No. 20 Civ. 8586 (AT), 2021 WL 4150947, at *4 (S.D.N.Y. Sept. 13, 2021).

Nor do Plaintiffs allege sufficient contacts with New York to establish personal jurisdiction. The Amended Complaint makes clear that DRH is a Delaware corporation with a principal place of business in California. (Am. Compl. ¶ 4). DRH does not employ Plaintiffs. (Am. Compl. ¶ 11). Plaintiffs have no contractual relationship with DRH and did not perform any duties for DRH. (Am. Compl. ¶¶ 11-12, 14).

The only basis for including DRH in this action is that there is an alleged overlap in officers between DRH and Prime. (Am. Compl. ¶¶ 5-6). Aside from bald, formulaic, and conclusory allegations of alter ego status, the Amended Complaint does not satisfy the standard necessary to invoke alter-ego jurisdiction in New York. *See Ferrante Equip. Co. v. Lasker-Goldman Corp.*, 26 N.Y.2d 280, 283 (1970) (to invoke alter-ego jurisdiction in New York, the plaintiff must show that "the record would justify . . . piercing the corporate veil."). Nor are Plaintiffs' allegations that Laag used DRH to advance his and Prime's interests sufficient to demonstrate that DRH is Prime's alter ego or to invoke alter-ego jurisdiction.

## II. Proposed Briefing Schedule

Defendants request thirty (30) days after the Court's decision at the pre-motion conference to file their anticipated motion to dismiss. Plaintiffs would have fourteen (14) days to file any opposition to Defendants' motion, and Defendants would have seven (7) days to file any reply in further support of their motion.

We thank the Court for its attention to this matter.

Respectfully submitted,

*/s/William J. Anthony*

William J. Anthony

cc: All Counsel of Record