LIPSKY LOWE LLP
AN EMPLOYMENT LAW FIRM

Douglas B. Lipsky
420 Lexington Avenue, Suite 1830
New York, New York 10170
Main: 212.392.4772
Direct: 212.444.1024
doug@lipskylowe.com

www.lipskylowe.com

September 30, 2026

VIA ECF
The Honorable P. Kevin Castel, U.S.D.J.
U.S. District Court Southern District of New York
500 Pearl Street
New York, New York 10007

Re: Maxwell *et al*. v. Prime Data Centers, LLC *et al.*, No. 1:26-cv-04493-PKC

Dear Judge Castel:

This firm represents the Plaintiffs. We submit this letter in opposing Defendants' request for leave to file a partial[1] motion to dismiss the First Amended Complaint ("FAC"). (ECF No. 25). Plaintiffs do not seek leave to amend the FAC but respectfully reserve the right to request such relief when reviewing Defendants' motion, assuming they are granted leave to file. At present, no conferences are scheduled.

1. Plaintiffs' Quasi Contract Claims are Not Duplicative

Defendants now acknowledge, "for purposes of the anticipated motion," that Plaintiffs' Employment Agreements are valid and enforceable and govern the compensation Plaintiffs seek. Yet they do not expressly acknowledge that Exhibit C constitutes a binding contractual obligation; indeed, they characterize the compensation as only "allegedly due under Exhibit C." Plaintiffs plead promissory estoppel, unjust enrichment, and *quantum meruit* expressly in the alternative should Exhibit C be held not to form part of a binding contract. (FAC ¶¶ 96, 127, 135). Rule 8(d) permits such alternative pleading, and Defendants' acknowledgment does not eliminate the contingency on which those claims are based. *See Northwell Health, Inc. v. Grp. Hospitalization & Med. Servs., Inc.,* 183 F.4th 78, 100–01 (2d Cir. 2026).

The quasi contract claims against DRH are, likewise, proper. Plaintiffs assert breach of contract only against Prime and allege that DRH directly benefited from Plaintiffs' services through the substantial appreciation of its equity interest in Prime and its acquisition of additional Prime-related equity interests, thereby alleging a benefit derived outside of the agreements. (FAC ¶¶ 128-131). *Randall's Island Aquatic Leisure, LLC v. City of New York*, 92 A.D.3d 463, 464 (1st Dep't 2012), does not compel a different result because there the agreement governed the subject matter of the dispute, whereas

---

[1] Defendants are not seeking leave to dismiss the breach of contract claim.

Plaintiffs' claims against DRH are expressly pleaded in the alternative should Exhibit C be held not to create the binding contractual obligation Plaintiffs allege.

2. Plaintiffs' Implied Covenant Claim Does Not Duplicate Their Breach-of-Contract Claim

Plaintiffs' implied covenant of good faith and fair dealing claim is distinct from their breach of contract claim. The contract claim is based on Prime's breach of specific provisions of the Employment Agreements; the implied-covenant claim is based on Prime's efforts to condition compensation on Plaintiffs' waiver of contractual rights, delaying implementation and payment of the Incentive Plan, Non-Discretionary Performance Fees, and Employee Co-Invest Rights, and exploiting the agreements' silence concerning the timing and valuation of any payout.

Plaintiffs also properly plead the claim in the alternative: if the challenged conduct did not breach an express contractual provision, it may nevertheless have deprived Plaintiffs of the benefit of their bargain. *Sorotzkin v. EmblemHealth Inc.*, 2023 U.S. App. LEXIS 29443, at *5-7 (2d Cir. Nov. 8, 2023) ("[I]f the allegedly improper conduct did not breach an express contractual provision, that is precisely the circumstance in which a party may maintain a claim for breach of the implied covenant"); *Titus v. UMG Recordings, Inc.*, 2023 U.S. Dist. LEXIS 207927, at *33-34 (S.D.N.Y. Nov. 20, 2023). Defendants' cases, by contrast, establish only that an implied-covenant claim cannot duplicate an express contract claim based on the same conduct and contractual obligation. That is not what Plaintiffs allege.

3. Plaintiffs Adequately Plead Their RICO Claims.

Plaintiffs properly plead the distinctiveness requirement of Section 1962(c). "[T]o establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). A corporate entity can be sued as a RICO "person" or named as a RICO "enterprise," *see* 18 U.S.C. § 1961(3), (4), but the same entity cannot be both the RICO person and the enterprise. The FAC makes this distinction.

Plaintiffs allege that Defendants Prime and DRH, as alter egos, together constitute the RICO enterprise, while Defendants Laag and Pelz – natural persons separate from the corporate Defendants – are the RICO "persons." Because Plaintiffs do not allege the corporate entities are the "persons," the distinctness requirement is satisfied. *See Cedric Kushner Promotions, Ltd*, 533 U.S. at 163 ("[A]n employee who conducts the affairs of a corporation through illegal acts comes within the terms of a statute that forbids any 'person' unlawfully to conduct an 'enterprise,' particularly when the statute explicitly defines 'person' to include 'any individual . . . capable of holding a legal or beneficial interest in property,' and defines 'enterprise' to include a 'corporation.'"); *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 263 (2d Cir. 1995) (holding corporate entities remain "separately existing legal entities capable of constituting an association-in-fact enterprise"

distinct from the individual who operates them, "even if [he] owned 100% of the shares of each corporation").

Defendants cite *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A*, 30 F.3d 339 (2d Cir. 1994) to argue Plaintiffs cannot satisfy the distinctiveness requirement because the "allegations describe the entities' ordinary business affairs, not a separate enterprise with a purpose, structure, or decision-making apparatus distinct from Defendants themselves." Defendants apply the wrong standard.

Courts in this circuit distinguish the *Kushner* and *Riverwoods'* standards for distinctness based on who are the alleged RICO "persons." *See Palatkevich v. Choupak*, 2014 U.S. Dist. LEXIS 10570, at *42 (S.D.N.Y. Jan. 24, 2014) ("After *Kushner* and *Riverwoods/Cruz,* the distinctness rules are as follows: within the meaning of § 1962(c), a *natural person* named as the defendant 'person' is inherently distinct from a corporate entity "enterprise" for which he acts as an agent; in such a case, the distinctness requirement is met. But where a *corporate entity* is named as the defendant "person," it is not distinct from any alleged 'enterprise' consisting of that corporate defendant together with related companies, employees, or agents."). *Id.* Here, the distinctiveness problem does not arise: Plaintiffs pleads Defendants Prime and DRH as the same corporate entity for RICO purposes, while pleading Defendants Laag and Pelz as the natural "persons."

Next, the FAC, contrary to what Defendants argue, pleads wire fraud with the required particularity under Rule 9(b). It identifies specific fraudulent wire communications, specifying the speaker, recipient, date, content, and reason each communication was false when made. These communications span more than four years and are directed at multiple employees and third party investors, including: the April 7, 2023 Laag email to former EVP of Product Delivery Jonathan Gibbs misrepresenting that PSP1 faithfully implemented existing compensation obligations when it materially deviated from the original EAs in ways Laag knew (FAC ¶¶ 55-59); the July 10, 2023 Laag email to former Chief Commercial Officer Chris Sumter falsely claiming his employment agreement had been flagged as an impediment to the Ares transaction closing when it had not (FAC ¶¶ 60-63); and the January 2024 "EA & Comp Comparison Letters" transmitted by Laag and Pelz to Plaintiffs inserting fabricated contract language into Article 3.3 that did not exist in the original EAs while presenting a valuation methodology producing a negative equity value for Prime as Defendants simultaneously sold equity to outside investors at valuations exceeding $800 million (FAC ¶¶ 79-83).

The FAC also sufficiently alleges Defendants knew these statements were false when made. While telling Plaintiffs and other employees that the EAs were unvested, unearned, or had negative value, Laag was acknowledging to Macquarie's Sam Southall in July 2023 that Prime's NAV milestones had been attained and that units "could actually be vested (in the money)," and sharing a spreadsheet with Ares in April 2025 acknowledging approximately 50,000 vested units worth approximately $200 million, while Prime's financial statements contained no disclosure or accrual for any compensation liability

whatsoever. (FAC ¶¶ 90, 96, 128). It, furthermore, pleads why they made these false statements to the Plaintiffs: to try and avoid paying the EAs which became prohibitively expensive and to avoid diluting Laag's ownership. And it pleads why they made these false statements to the investors: to get and keep their money.

The FAC further sufficiently pleads a RICO injury the wire fraud caused. Section 1964(c) confers standing on "[a]ny person injured in his business or property by reason of" a RICO violation. Unlike common law fraud, reliance *is not* required to prove an underlying violation of the statute. *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 649 (2008); *See also Williams v. Equitable Acceptance Corp*., 443 F.Supp 3d 480, 491 (S.D.N.Y. 2020) ("no showing of reliance is required" even when mail or wire fraud is asserted as a predicate act of RICO claim under 18 U.S.C § 1962(c).")

Plaintiffs sufficiently allege injury to their own property: vested phantom-equity units, Non-Discretionary performance fees, and Employee Co-Invest Rights. Namely, as the value of that property grew, Defendants artificially suppressed its value to zero through a knowingly false valuation methodology; and they refused to implement and pay the promised Plaintiffs under those programs, while trying to pressure Plaintiffs and others to accept new agreements. Plaintiffs were also injured in their business: Defendants induced them to continue working for Defendant Prime on the basis of Defendant Laag and Pelz's misrepresentations that they had equity. Plaintiffs' injuries thus include their forbearance to their right to collect incentive compensation in reliance of Defendants' assurances that it would be paid, and the total deprivation of that incentive compensation. These are concrete harms, which Defendants perpetrated through email and Teams messages.

Next, the RICO claim sufficiently satisfies the continuity requirement. Namely, the FAC details a scheme spanning from at least February 2021, when Defendants fraudulently induced former Senior Sales Executive Jeff Barber to forfeit his compensation, through at least December 2025, when Defendants finalized PSP2 grants to current employees on the same fraudulent terms, with predicate wire acts directed at multiple victims across multiple transactions over those years. As for open-ended continuity, the employee victims are not a closed set. As recently as late 2025 and early 2026, Defendants attempted to fraudulently induce Senior Vice President William King to sign a new employment agreement stripping him of promised equity, and transmitted a November 2025 retention letter to Senior Solutions Engineer Scott Kuebler offering phantom share units to induce his continued employment. As long as Prime continues to hire senior employees with phantom equity as a recruitment and retention tool, the scheme has new victims. That is not an inherently terminable scheme; it is ongoing.

The RICO claim likewise sufficiently pleads conspiracy. Section 1962(d) requires only that each defendant knowingly agree to facilitate a scheme which, if completed, would constitute a substantive RICO violation. *See U.S. v. Applins*, 637 F.3d 59, 74 (2d Cir. 2011). An agreement may be manifested "by words or actions." *Maersk, Inc. v. Neewra, Inc.*, 554 F. Supp. 2d 424, 462 (S.D.N.Y. 2008). That standard is easily met here. The FAC alleges

that Laag and Pelz jointly designed PSP1 and PSP2, coordinated their misrepresentations to employees across multiple transactions, jointly transmitted the January 2024 "EA & Comp Comparison Letters" containing fabricated contract language, and together directed Prime and DRH as instrumentalities of the scheme over a period of more than four years.

Finally, this Court has personal jurisdiction over DRH. First, DRH is a defendant on Plaintiffs' RICO conspiracy claim, and 18 U.S.C. §1965(b) provides for nationwide service and jurisdiction over additional defendants where, as here, no single district has personal jurisdiction over all defendants. *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 71-72 (2d Cir. 1998). Second, DRH is an intended beneficiary of Plaintiffs' employment: Plaintiffs' EAs contemplate their performance of services for "Company Affiliates" and expressly make those affiliates third-party beneficiaries of the confidentiality provisions, bringing DRH squarely within the contemplated scope of the employment relationship. (FAC Ex. 1 at 36, 66.) Third, Plaintiffs have adequately alleged DRH is Prime's alter ego: it conducts no independent operations, has no employees or infrastructure, shares officers and decisionmakers with Prime including Laag and Pelz, commingles corporate assets, and serves as nothing more than a holding vehicle for the value Plaintiffs' work created at Prime, which Laag leveraged to entrench his majority control while Plaintiffs received nothing. Because the jurisdictional standard for alter ego is less onerous than the standard for piercing the veil for liability purposes, *JoySuds LLC v. Awesome Prods., Inc.*, 2026 U.S. Dist. LEXIS 30584, at *6 (S.D.N.Y. Feb. 13, 2026), and because Prime is indisputably subject to jurisdiction here, so is DRH.

4. <u>Plaintiffs Adequately Plead Retaliation Under Labor Law § 740</u>

Plaintiffs adequately plead protected activity under Labor Law § 740. As amended, § 740 protects employees who disclose conduct they reasonably believe violates a law, rule, or regulation; an actual violation is not required. *Pierce v. Better Holdco, Inc.*, No. 22 Civ. 4748 (AT), 2023 U.S. Dist. LEXIS 177137, at *16-20 (S.D.N.Y. Sept. 29, 2023). Here, Plaintiffs challenged materially false statements concerning their compensation rights and raised concerns with Prime's auditor and Board regarding the accuracy of Prime's financial reporting and disclosures. Defendants' characterization of those complaints as merely concerning "accuracy, implementation, and reporting" does not establish, at the pleading stage, that Plaintiffs could not reasonably have believed the challenged conduct was unlawful. *See McSweeney v. Cohen*, 776 F. Supp. 3d 200, 275-77 (S.D.N.Y. 2025).

Plaintiffs also plead retaliatory action. They allege written warnings, threats of termination, withholding salary increases, bonuses and other compensation, and conduct culminating in their constructive discharge. Those allegations are materially different from *Landell v. Life Bridge Dental PLLC*, 236 A.D.3d 520, 521-22 (1st Dep't 2025), where the plaintiff alleged no reduction in pay, no change in employment terms, or no comparable material injury.

Finally, Defendants' temporal-gap argument fails because Plaintiffs do not rely on timing alone. They allege a continuing course of adverse conduct and direct retaliatory statements, including Laag's characterization of their whistleblower letter as a "mistake" and warning that Patito should "learn from [his] mistakes." Where other facts support causation, lack of close temporal proximity is not dispositive. *Harrington v. City of New York*, 157 A.D.3d 582, 586 (1st Dep't 2018).

5. <u>Plaintiffs Adequately Plead a Fraudulent Transfer Under DCL § 273(a)(1)</u>

Defendants' argument that the claim fails because DRH did not itself owe Plaintiffs a debt confuses the debtor with the transferee or beneficiary. Plaintiffs allege that Prime was the debtor and that, on June 27, 2024, Prime transferred $28 million of its own cash to repurchase Macquarie units while paying nothing toward Plaintiffs' compensation obligations. The transfer allegedly benefited DRH and Laag's other entities by preventing the loss of 28,591 units and preserving DRH's 142,468 units. A transferee or beneficiary need not itself owe the underlying debt. *Patterson Belknap Webb & Tyler LLP v. Marcus & Cinelli LLP*, 227 A.D.3d 505, 506-07 (1st Dep't 2024) ("liability may also attach if defendants benefited in any way from a transfer").

Defendants' characterization of the Grain transaction as merely an "inflow" to DRH likewise ignores what happened. Plaintiffs allege that Laag caused DRH to receive the $500 million Grain investment and used those proceeds to acquire WDCAH's Prime-related equity interests and preserve Laag's majority control, while Prime's obligations to Plaintiffs remained unpaid and undisclosed. Plaintiffs further allege that DRH is Prime's alter ego and, on that basis, the Grain transaction constitutes a transfer by Prime for DCL purposes, with DRH the direct transferee and beneficiary. The FAC also alleges badges of fraud, including insider control, concealment of Prime's liabilities, and the timing of the transaction after Plaintiffs had formally asserted their claims. Those allegations are sufficient at the pleading stage. *See* N.Y. Debt. & Cred. Law § 273(b); *Wall Street Assocs. v. Brodsky*, 257 A.D.2d 526, 529 (1st Dep't 1999).

6. <u>Plaintiffs Adequately Plead Alter-Ego Liability Against DRH</u>

Plaintiffs may pursue their alter-ego theory against DRH in the same action in which they seek to establish Prime's underlying liability. *Nantong Sanhai Garment Co. v. Fab Mill Inc.*, 2022 U.S. Dist. LEXIS 32975, at *4-5 (S.D.N.Y. Feb. 23, 2022) (permitting alter-ego allegations to proceed alongside unresolved contract claims where the issue required further factual development). Thus, Plaintiffs need not first obtain a judgment against Prime before litigating whether DRH may be held responsible for that liability.

Defendants' reliance on *Daebo International Shipping Co. v. Americas Bulk Transport Ltd.*, 2013 U.S. Dist. LEXIS 70731, at *9-12 (S.D.N.Y. May 17, 2013) is misplaced. There, the court declined declaratory relief because the plaintiff had not established an enforceable right in the underlying arbitral award, such that an alter-ego declaration would not resolve any live liability. Here, Plaintiffs seek to establish Prime's underlying liability and DRH's alter-ego responsibility in the same action. Defendants is

accordingly wrong to argue that alter-ego liability cannot be addressed until after Prime's liability is separately established.

Briefing Schedule

Plaintiffs consent to Defendants' briefing schedule except for Plaintiffs' opposition, which should be due within 30 days of the moving papers being filed.

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants leave to move to dismiss the FAC.

Respectfully submitted,
LIPSKY LOWE LLP

s/ Douglas B. Lipsky
Douglas B. Lipsky
Travis Pierre-Louis
Blake Ferris